UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARTIN MARRERO,

             Plaintiff,          **DECISION AND ORDER**

   -vs-                     **No. 08-CV-6237(MAT)**

KIRKPATRICK, et al.,

             Defendants.
_____

## I.   Introduction

Proceeding <u>pro</u> <u>se</u>, plaintiff Martin Marrero ("Marrero" or "Plaintiff"), an inmate in the custody of the New York Department of Corrections and Community Supervision, filed the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights.

## II.  Factual Background

Unless otherwise noted, the following are the undisputed facts viewed in the light most favorable to Plaintiff.

Marrero, at all relevant times, was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS") and incarcerated at Wende Correctional Facility ("Wende"). Northrup and Sindoni were employed by NYSDOCCS, as an Inmate Grievance Program ("IGP") Supervisor and a Correctional Sergeant at Wende, respectively.

The Wende IGP is operated in accordance with NYSDOCCS Directive #4040, and its intent is to provide each inmate with "an

orderly, fair, simple and expeditious method for resolving grievances, pursuant to section 139 of the [New York] Correction Law, and allegations of discriminatory treatment, pursuant to 7 N.Y.C.R.R. Part 7694." 7 N.Y. Comp. Code R. & Regs. § 701.1 Each facility has an Inmate Grievance Review Committee ("IGRC"), a five-member body consisting of two inmates with voting rights, two voting staff members, and a non-voting chairperson. 7 N.Y. Comp. Code R. & Regs. § 701.4.

Marrero was elected to the position of IGRC representative in September 2007, and he commenced his term on October 4, 2007. Immediately, Marrero recalls, he and Defendants began to have conflicts. Marrero states that he challenged Defendants because he believed they were not properly running the IGP and were disregarding certain statutory mandates. For instance, Marrero contends that Sindoni would try to intimidate inmates into "signing off" on their complaints in order to close the matters. When he questioned Defendants' conduct in regards to how they handled grievances, Plaintiff states, Defendants became angry, verbally berated him, accused him of undermining the system, and threatened to "lock him up" (i.e., write up a misbehavior report against Marrero and have him put in keeplock).

An overview of the chronology of events relevant to Marrero's claims of retaliation follows. On October 9, 2007, Plaintiff wrote a letter to Superintendent Robert Kirkpatrick ("Kirkpatrick")

regarding his disagreements with Northrup and Sindoni about their handling of grievances and their harassment of him. D.169.[1] On October 10, 2007, Plaintiff wrote a letter to Karen Bellamy ("Bellamy"), Director of IGP reiterating his disagreements with Northrup and Sindoni about how they handled grievances and their harassment of him.

In the meantime, Ryan English ("English") of the Central Office Review Committee ("CORC") was reviewing grievances as part of his job duties. Based upon certain improprieties he observed in the grievances, English wrote an email to Northrup on October 10, 2007, at 12:39 p.m., which stated in pertinent part as follows:

> A few IGRC responses that I have seen (from the Inmate Rep.'s) have what appear to be personal observations and slight sarcasm. . . . [P]lease advise the Rep.'s that recommendations are to be objective, not opinionated, free of sarcasm and professional. . . . Opinions should not be injected into the recommendation.

D.148. Based upon English's email to her, Northrup issued a Counseling Memo to Plaintiff on October 11, 2007, stating that he was undermining the IGP by stating assumptions and opinions rather than investigated facts, and thereby creating conflicts between inmate population and staff. D.146.

On October 14, 2007, frustrated that he had not had a response from Kirkpatrick, Plaintiff wrote a follow-up letter to him. D.167.

---

[1] Numbers preceded by "D." refer to pages in Defendants' Document Disclosure (Dkt. #24).

On October 15, 2007, an incident occurred between Northrup and Plaintiff which Northrup characterizes as Plaintiff being insubordinate and Plaintiff characterizes as Northrup erupting into a "screaming tirade", Complaint, ¶ 30, for no reason. Northrup issued a second counseling memo that day, noting that Marrero was violating the IGRC code of ethics by refusing to answer a direct question posed by her and by being sarcastic when he finally answered. D.77.

Plaintiff in turn filed an official grievance against Northrup on October 15, 2007, alleging that she was disrespectful. D.1.  On October 16, 2007, Plaintiff filed another grievance against Northrup claiming that she predetermined responses to inmate grievances and attempted to coerce him into agreeing with her as to how grievances should be disposed. D.29.  Plaintiff filed a third grievance on October 16, 2007, against Northrup claiming that she predetermined responses to inmate grievances and improperly required the IGRC to dismiss grievances. D.40.[2]

After Northrup reported the behaviors for which she had written-up Marrero to English at CORC, English recommended that Northrup commence impeachment proceedings against Marrero on October 17, 2007, based upon his being adversarial, attempting to

---

[2]

These grievances were investigated and ultimately denied as unfounded. E.g., D.4, 9, 12.

-4-

undermine the IGP, and failing to attend to his responsibilities. D.160.

Pursuant to English's directive, Northrup filed a recommendation on October 23, 2007, to remove Marrero from his position as IGRC inmate representative due to his inappropriate responses to grievances, exhibition of a disrespectful attitude in the grievance office, stating opinions instead of facts during IGRC hearings, asserting that he would always take the inmate's side, and inciting the inmate population against the IGP. D.137.

On October 26, 2007, Plaintiff voluntarily tendered his resignation as IGRC representative, effective November 6, 2007. D.161. Northrup was not involved in the resignation.

Captain Kearney conducted a hearing on the impeachment recommendation on November 5 and November 6, 2007. See Dkt. #24, Ex. E & F. Since Marrero had already resigned as IGRC representative, the only issue at the hearing was whether he would be prohibited from serving in that position in the future. After the hearing, Captain Kearney recommended that Marrero not be permitted to run for or be appointed to the position of IGRC representative for a period of one year.

Marrero subsequently filed this action, naming Kirkpatrick, Bellamy, Northrup, and Sindoni as defendants. On October 5, 2009, the Court (Larimer, D.J.) dismissed all claims against Kirkpatrick and Bellamy and dismissed Plaintiff's "failure to investigate",

conspiracy, and due process claims against Northrup and Sindoni. See Dkt. #12. The claims presently pending against Northrup and Sindoni allege that they retaliated against him for exercising his First Amendment rights in his position as IGRC representative and harassed him.

Defendants moved for summary judgment (Dkt. #31) and served Plaintiff with an IRBY Notice (Dkt. #32). Plaintiff has opposed the motion (Dkt. #40).

The matter was transferred to the undersigned on June 22, 2012 (Dkt. #44). For the reasons discussed below, Defendants' motion is granted, and the complaint is dismissed with prejudice.

## III.  General Legal Principles

### A.  Standard for Summary Judgement Under Rule 56(c) of the Federal Rules of Civil Procedure

A motion for summary judgment pursuant to Rule 56(c) may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986). Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. Celotex, 477 U.S. at 322-23; see also Silver v. City Univ. of N.Y., 947 F.2d 1021, 1022 (2d Cir. 1991). The "mere existence of a scintilla of evidence" supporting the non-moving party's cause is insufficient. Anderson, 477 U.S. at 252. The non-moving party may not rely on evidence that is merely colorable, conclusory, or speculative but must come forward with "concrete evidence from which a reasonable jury could return a verdict in [his] favor." Id. at 256.

**B.   First Amendment Retaliation Claims**

In order to establish a First Amendment retaliation claim, a plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected activity and the adverse action. Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002)); see also Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving retaliatory motive by presenting circumstantial evidence, such as temporal proximity between the adverse act and the protected conduct, thus obviating the need for direct evidence. Bennett v. Goord, 343 F.3d 133,

-7-

138-39 (2d Cir. 2003). Other factors from which a court can infer an improper motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995).

"[I]n the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill, 389 F.3d at 381 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original)). The objective test regardless of whether a particular plaintiff was in fact himself deterred. Id.

If the plaintiff can meet these requirements, the burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation, Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), by demonstrating that there is no dispute that the plaintiff "committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.) (per curiam), cert. denied, 525 U.S. 907 (1998); see also Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (holding that the defendants met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").

### C.    Verbal Harassment

In the Second Circuit, allegations of verbal harassment or threats by prison staff are generally an insufficient basis for an inmate's § 1983 claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); Rosales v. Kikendall, 677 F. Supp.2d 643, 648 (W.D.N.Y. 2010) (collecting cases); Tafari v. Paul, No. 06-CV-0603, 2009 WL 3260075, at *1 (W.D.N.Y. Oct. 8, 2009) (allegations of verbal harassment or abuse, "without a showing of an actual injury, are insufficient to support a § 1983 claim") (citing Lewis v. Casey, 518 U.S. 343, 349-50 (1996)).

## IV.  Analysis

### A.    The First Amendment Retaliation Claim

The filing of lawsuits or prison grievances is a constitutionally protected activity. Graham, 89 F.3d at 80 (citing, inter alia, Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988)). In addition, an inmate grievance representative performing his duties engages in protected activity for purposes of the First Amendment. Alnutt v. Cleary, 913 F. Supp. 160, 169 (W.D.N.Y. 1996) (holding that an inmate has a protected First Amendment right to "engage in his duties as IGRC representative without fear of reprisal or retaliation"); accord, e.g., Jones v. Goord, Civ. No. 9:05-CV-1438 (DNH/RFT), 2009 WL 790978, at *6 (N.D.N.Y. Mar. 3, 2009); Gill v.

Riddick, No. Civ. 9:03-CV-1456, 2005 WL 755745, at *9 (N.D.N.Y. Mar. 31, 2005) (noting that "an inmate's constitutionally protected right to serve as a grievance committee representative is derived from the inmates' protected rights to petition for redress").

Defendants claim that Marrero did not engage in a protected activity until he submitted formal grievances regarding Northrup, by which time Northrup had already issued two "Counsel Notifications" to him advising him that his conduct vis-a-vis the IGRC was inappropriate.[3] Thus, Defendants argue, Marrero cannot establish a causal connection because the retaliatory treatment (counseling memos) preceded the protected activity (official grievances). Marrero contends that his letter dated October 9, 2007 (which pre-dated the grievances), to Superintendent Kirkpatrick complaining about Northrup constituted a protected activity, for which he was subjected to retaliation (the first Counsel Notification dated October 11, 2007). Marrero contends that he also engaged in protected activity on October 14, 2007, when he wrote a follow-up letter to Superintendent Kirkpatrick, inquiring as to whether his October 11th letter had been received. Marrero states that he was retaliated against for writing the October 14th letter, as evidenced by the second Counsel Notification issued by Northrup

---

[3]

Marrero did not file any grievances until after October 15, 2007. See Dkt. #31, ¶¶ 8-11; Dkt. #24 (collecting grievances).

on October 15, 2007. D.167-69. Kirkpatrick sent a responsive memo to Marrero on October 18, 2007, regarding his letters. D.166-82.

Even assuming that Marrero engaged in protected activity by writing the two letters to Superintendent Kirkpatrick, he has not demonstrated that the protected conduct was a substantial or motivating factor for the adverse actions taken by Northrup. First, Northrup denies having knowledge of Marrero's October 9th and October 14th letters to Kirkpatrick. This is supported by the fact that her October 15th and October 16th investigative memos submitted on grievances WDE-27469-07, WDE-27474-07, WDE-27275-07, and WDE 27276-07 do not mention Plaintiff's letters. See Dkt. 31, ¶ 11; D.22, 41, 53, & 68. Without knowledge of Plaintiff's letters, Northrup could not have engaged in retaliatory treatment based upon them.

Even if Northrup was aware of the October 9th and October 14th letters, Plaintiff has not demonstrated the October 11, 2007, counseling memo was motivated by a retaliatory animus. English, a CORC coordinator, noticed the issues with Marrero while reviewing Wende grievances as part of his job duties. On October 10, 2007, English brought these issues to Northrup's attention and recommended that she "remind [Plaintiff] that the grievance process was not intended to be adversarial and that grievance representatives were expected to be objective, and not to be opinionated or sarcastic. . . ." Dkt. #31, ¶ 6; see also Dkt. #24

at 17. Thus, Northrup sent the first counseling memo at English's behest, and not because she was attempting to retaliate against Marrero for writing to Kirkpatrick. In other words, the October 11th counseling memo was not substantially motivated by the protected activity.

With regard to the October 15th counseling memo, the Court again assumes for the sake of argument that Plaintiff had engaged in protected activity by writing the second letter on October 14th to Superintendent Kirkpatrick. The Court agrees with Defendants, however, that it was not a substantial motivating factor in the issue of this counseling memo. Rather, the second counseling memo was issued as the result of Marrero's failure to comply with the first counseling memo, which was recommended by English of the CORC.

To the extent that Plaintiff contends that he was retaliated against as the result of his filing formal grievances, Defendants correctly note that the counseling memo dated October 15, 2007, was issued to Plaintiff prior to his filing the first formal grievance. The remainder of Plaintiff's formal grievances were filed after October 15, 2007. Thus, Plaintiff has not shown a causal connection between the grievances he filed and the October 15th counseling memo.

Moreover, Plaintiff has not come forward with circumstantial evidence of Defendants' retaliatory motive. For example, his

grievances against Northrup all were denied as unfounded after they were investigated. See Bennett v. Goord, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, inter alia, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded).

Finally, the Court concludes that Defendants have shown, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. There is a substantial amount of evidence provided by non-parties confirming Northrup's and Sindoni's observations regarding Marrero's inappropriate, contumacious behavior. For instance, on October 15, 2007, Steve Furlani, Education Supervisor, sent a memo to Northrup regarding the grievance hearing on October 4, 2007, following up on his verbal report that

> an inmate later identified as Marrero - 94A4547 was argumentative during the hearings of which I was a part . . . . He interjected his opinion several times with the Sergeant present in an argumentative manner. Also during the hearings he continued to review and work on his own grievance which the Sergeant directed him to stop.

In addition, P. Reeves ("Reeves"), KBS II at Wende, sent a memo to the Grievance Department on October 15, 2007, noting that he (or she) had been an active staff grievance representative for nine years and had worked with Northrup since her appointment. Reeves had never heard Northrup harass Marrero, although Northrup had

-13-

corrected him "due to the fact that he has a tendency to express his personally opinion, instead of answering the action requested". However, Reeves "would never have considered it harassment."

Marrero himself admitted to T.J. Sticht ("Sticht"), Wende Deputy Superintendent of Security, that he had a personality conflict with Northrup. Marrero's sole witness at the hearing to remove him as IGP representative,[4] Inmate Wurfman, could only acknowledge a personality conflict between the two. Sticht concluded that Marrero "has a strong impression of how the program should run" and "also does not appear to be one who takes direction. . . regardless if he's right or not." Sticht recommended to English that it was "probably best" if Marrero found a new assignment.

In sum, Marrero has failed to raise a genuine issue of material fact with regard to the required elements of his First Amendment retaliation claim. See Bussey v. Phillips, 419 F. Supp.2d 569, 585 (S.D.N.Y. 2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials."). Furthermore, Defendants have

---

[4] During the course of the hearing, Marrero resigned his position on the IGRC.

come forward with sufficient evidence that other non-retaliatory reasons to take the adverse action were present. Id.  Accordingly, Defendants are entitled to summary judgment on this cause of action.

### B.   Verbal Harassment

Plaintiff alleges that Defendants threatened and verbally harassed him during IGRC meetings and in the IGRC office. The law is well-settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." Gill v. Hoadley, 261 F.Supp.2d 113, 129 (N.D.N.Y. 2003) (citing Alnutt v. Cleary, 913 F. Supp. at 165-66). Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y. 1998). Even verbal threats do not amount to a constitutional violations. Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995); accord, e.g., Jones v. Goord, Civ. No. 9:05-CV-1438 (DNH/RFT) 2009 WL 790978, *9 (N.D.N.Y. Mar. 3, 2009).

The fact that Marrero alleges that the verbal harassment by Northrup and Sindoni was motivated by his activities in his role as inmate grievance representative does not alter that result." Rosales v. Kikendall, 677 F. Supp.2d at 648. "[V]erbal harassment,

or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." Id. (citing Cabassa v. Smith, No. 1212495, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) ("Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard") (collecting cases); Chavis v. Struebel, 317 F. Supp.2d 232, 237 (W.D.N.Y. 2004). Marrero's claims against Northrup and Sindoni based upon their alleged verbal harassment of him fail as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. #31) is granted, and the Complaint (Dkt. #1) is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 6, 2012
           Rochester, New York

-16-